KNOWLTON COMPANY, APPELLANT, *v.*
KNOWLTON ET AL., APPELLEES.

(Nos. 82AP-464 and -557—Decided March 10, 1983.)

*Messrs. Schwartz, Shapiro, Kelm & Warren, Mr. Russell A. Kelm* and *Mr. Harry A. Goussetis,* for appellant.

*Messrs. Chester, Hoffman & Willcox, Mr. John J. Chester* and *Mr. Donald C. Brey,* for appellees.

WHITESIDE, P.J. Plaintiff, Knowlton Company, appeals from a judgment of the Franklin County Court of Common Pleas sustaining the motion of defendants Austin E. Knowlton and Knowlton Construction Company for summary judgment and entering judgment in their favor and dismissing plaintiff's complaint, while retaining for future determination the counterclaims and cross-claims filed by defendants and making the requisite Civ. R. 54(B) findings. Plaintiff also appeals from an order denying its motion for partial summary judgment and the granting of defendants' motion for a protective order with respect to taking the deposition of an attorney.

There are two appeals because, upon

the original judgment entry, the trial court made no reference to defendants' counterclaims and cross-claims, although making the requisite Civ. R. 54(B) finding. Upon motion of the defendants, the judgment was amended to indicate that no judgment had been entered with respect to defendants' counterclaims and cross-claims. Out of precaution, plaintiff filed two notices of appeal, one from the original order and one from the amended order; however, no separate issues are involved.

In support of its appeal, plaintiff-appellant, the Knowlton Company, raises four assignments of error as follows:

"I. The trial court erred in granting summary judgment to defendants on the basis of the affirmative defense of release.

"II. The trial court erred in granting defendants' motion for summary judgment when no date had been set for either an oral or non-oral hearing on the motion.

"III. The trial court erred in overruling plaintiff's motion for partial summary judgment on Counts 11, 12, and 13 of the complaint.

"IV. The trial court erred in granting defendants' motion for protective order precluding plaintiff from deposing its own former attorney."

The matter now before us has a long history involving conflict within the Knowlton family, plaintiff being a closely held family corporation which operates as an investment company developing, managing and owning real estate. Plaintiff was founded by defendant Austin E. Knowlton; there were four stockholders, himself, his wife and his two daughters, one of whom was a minor whose stock was held by him in trust.

There were also other family corporations. However, as a result of a series of mergers and reorganizations in 1965, A. E. Knowlton owned all of the voting stock (Class B common stock), representing approximately 18.50 percent of the total ownership interest. The remainder of the ownership interest was vested in his wife

and two daughters through Class A nonvoting common stock with his then wife, P.C. (or Phyllis) Knowlton, owning 22.32 percent, his daughter Pamela Knowlton, through him as guardian, owning 38.84 percent, and his other daughter, Suzzanne Schultz, also owning 38.84 percent of the Class A nonvoting common stock of plaintiff. Although not clear from the record, presumably, a share of Class A stock represented the same ownership interest as a share of Class B stock, the distinction being that only Class B stock was voting stock. Owning all of the Class B voting stock, defendant A. E. Knowlton virtually controlled plaintiff corporation.

Family difficulties arose, and in 1971 P.C. Knowlton commenced an action in Delaware County seeking a divorce from A. E. Knowlton. Later, in August 1971, P.C. and Pamela Knowlton and Suzzanne Schultz commenced an action against defendants and plaintiff in United States District Court contending mismanagement by A. E. Knowlton of plaintiff and other corporations to their detriment and seeking equitable relief and substantial monetary damages. Part of the alleged mismanagement dealt with the various mergers by which A. E. Knowlton gained virtual control of plaintiff. Many of the allegations of the district court case are repeated in the complaint herein. Apparently other actions were also commenced between the parties.

In any event, a few days after the commencement of the action in district court, the parties and their attorneys met at the Delaware County Courthouse and entered into an agreement which they had transcribed by the court reporter. Basically, the agreement provided for a thirty-day moratorium on fighting between the parties, during which time they would attempt to negotiate their differences. This agreement (the August 1971 agreement) provided in part that:

"All persons named at the outset of this agreement, including Mr. and Mrs. Knowlton, Mrs. Schultz, and Miss Valerie

[Pamela] Knowlton, have reached an agreement with regard to the disposition of all other litigation involving those parties now pending in various courts. That agreement is as follows:

"* * *

"With regard to an action recently filed in the United States District Court * * * referred to by the parties as the 10-B-5 Action, that action will also be dismissed by the plaintiffs without prejudice.

"* * *

"If within the thirty-day period, a settlement is reached between all of the parties to the pending litigations, full releases will be executed by the parties in order to prevent future litigation among these members of the Knowlton family. If during this thirty-day period, Mr. and Mrs. Knowlton reach an agreement dealing with a resolution of property rights and/or alimony which does not resolve claims of the other parties to the litigation, and specifically, Mrs. Schultz and Miss Valerie Knowlton, then the settlement may nevertheless be consummated between Mr. and Mrs. Knowlton; and this would not bar either Mrs. Schultz or Miss Valerie Knowlton from either proceeding with the guardianship matter or refiling any actions previously dismissed.

"The intention of this provision is to encourage, to the extent possible, a complete settlement among these members of the Knowlton family, but it is not intended to restrict in any manner a settlement that might be reached between Mr. and Mrs. Knowlton alone."

While it is not clear as to what happened between Mrs. Schultz and Miss Knowlton, an agreement was reached between Mr. and Mrs. Knowlton, and a separation agreement was executed, which was incorporated into a decree of divorce in November 1971. The separation agreement, executed on November 24, 1971, recites that the parties agreed on October 20, 1971 to "resolving all claims of P.C. Knowlton against A.E. Knowlton, including but not limited to those made in the divorce action brought by P.C. Knowlton against A.E. Knowlton in the Delaware County Court of Common Pleas." Among other things, this agreement required A.E. Knowlton to transfer to P.C. Knowlton all of his stock in plaintiff corporation, representing approximately 18.50 percent of the stock of that company, but all of the voting power thereof. The agreement further provided that certain documents and matters were to be delivered to escrow agents, consisting of attorneys of the parties, to be held for an eighteen-month period commencing on November 1, 1971, among which was the stock certificate to be transferred by A.E. Knowlton to P.C. Knowlton.

The agreement further provided that A.E. Knowlton was to obtain the resignation of the third director, who would be replaced by a person selected by P.C. Knowlton, with both A.E. and P.C. Knowlton continuing as directors until expiration of the eighteen-month period, at which time A.E. Knowlton would resign as director. The agreement further recognized the existence of two contracts being fulfilled by plaintiff corporation and provided that A.E. Knowlton would remain president of said corporation to complete those contracts for the eighteen-month period commencing on November 1, 1971, provided that "any profit or loss from the pending construction contract shall be for the benefit of or sustained by A.E. Knowlton." In addition, the separation agreement provided that: "At the closing, A.E. Knowlton and P.C. Knowlton shall execute mutual releases of any and all claims either has or may have against the other." The separation agreement was signed not only by A.E. and P.C. Knowlton, individually, but was also executed by them on behalf of plaintiff corporation.

An escrow agreement was also executed by plaintiff corporation, A.E.

Knowlton and P.C. Knowlton. The escrow agreement recited that:

"The Knowlton Company is authorized by action of the Company's Board of Directors, a copy of said resolution being attached hereto as Exhibit B, to enter into this Agreement and to do all things necessary to consummate this Agreement according to its terms. All shareholders of the Knowlton Company have been informed of the transfer herein described and has [*sic*] consented to said transfers. * * *"

The other shareholders, Mrs. Schultz and Miss Knowlton, did not sign the agreement.

In April 1977, plaintiff corporation commenced this action, repeating many of the allegations from the United States District Court complaint and further making new allegations not specifically referred to in the federal complaint as to alleged mismanagement by A.E. Knowlton for the benefit of himself and defendant Knowlton Construction Company. In addition, the complaint alleges that A.E. Knowlton is indebted to plaintiff on a $60,000 cognovit promissory note executed in March 1972, with none of the principal or interest having been paid. The complaint further alleges that, during the eighteen-month escrow period, A.E. Knowlton converted personal property of plaintiff either to his own use or that of an entity controlled by him for which $200,000 in damages is sought. Plaintiff also alleges that a $200,000 loss was sustained on completion of the two construction contracts during the escrow period, which has not been paid by A.E. Knowlton.

In sustaining defendants' motion for summary judgment, the trial court rendered a written opinion, stating in pertinent part that: "The court finds that defendants are entitled to judgment as a matter of law as the agreements reached in 1971 between and among the members of the Knowlton familty operated as a release which bars this action." No other reason or basis was given for the trial court's decision, and none other is apparent from the record.

The first assignment of error is well-taken with respect to those matters which arose after the execution of the separation and escrow agreements. This would include the claims alleged in Counts 11, 12 and 13 of the complaint and as to which plaintiff sought summary judgment in its favor. It would also include any other matters which arose or pertain to periods of time subsequent to the execution of the separation and escrow agreements. For example, with respect to Count 7 of plaintiff's complaint, the claim would be viable with respect to payments made during the escrow period and thereafter but not as to those made before, although A.E. Knowlton has alleged a valid defense thereto. One exception to this is the matter contained in Count 9 of the complaint, as to which no claim for relief is alleged as against defendants. It is alleged that, by an addendum to a lease dated November 1, 1971, Huffman was granted an option to purchase certain real estate exercisable in 1979, but that the option was granted without consideration. Assuming the allegations of the complaint are correct and no consideration was given, the option would not be enforceable by Huffman, and any action should be against Huffman. As of the time of the filing of the complaint, the option was not exercisable, and there is no indication by supplemental complaint or otherwise that Huffman has yet attempted to exercise the option, much less successfully done so. Even assuming that there otherwise could be a valid claim against defendants, it had not yet arisen at the time of the filing of the complaint. Of course, if the option was without consideration, it is not enforceable, and, if it were supported by valid consideration, no claim has been alleged against defendants.

As to the remaining counts of the complaint, the trial court correctly found that the document executed by plaintiff

and the Knowlton family in 1971 constitutes such a release as to effectively bar plaintiff Knowlton Company from pursuing these claims.

From the three agreements, the August 1971 agreement, the separation agreement and the escrow agreement, it is clear that the parties intended to resolve all differences between them existing at the time of the execution of the separation agreement.

Where a corporation is owned by a group of stockholders (or a single stockholder), they may not maintain a derivative action against the person from whom the stock was acquired for alleged wrongful mismanagement of the corporation prior to their acquisition of the stock from him. Thus, in *Bangor Punta Operations, Inc.* v. *Bangor & Aroostook RR. Co.* (1974), 417 U.S. 703, the court, at page 710, stated:

"* * * The resolution of this issue depends upon the applicability of the settled principle of equity that a shareholder may not complain of acts of corporate mismanagement if he acquired his shares from those who participated or acquiesced in the allegedly wrongful transactions. * * * This principle has been invoked with special force where a shareholder purchases all or substantially all the shares of a corporation from a vendor at a fair price, and then seeks to have the corporation recover against that vendor for prior corporate mismanagement. * * *"

This same principle was applied by the Ohio Supreme Court in *Hocking Valley Ry. Co.* v. *Toledo Terminal RR. Co.* (1918), 99 Ohio St. 35, 46, wherein it is stated:

"The original seven proprietors of the terminal company are the only ones who could benefit by a repudiation of the contract. By reason of holding the majority of the stock, these seven companies are in control of its board of directors and managing officers. They cannot use this corporation as an instrument to avoid or defeat the manifest purpose and intent of their own contract, defining the rights and liabilities of those who under the terms and conditions written therein purchased stock directly from the individual stockholders party thereto."

In this case, P.C. Knowlton is the owner of all the voting stock of plaintiff corporation, having acquired same pursuant to the separation agreement from A.E. Knowlton. By virtue thereof, she is in control of plaintiff corporation, its board of directors and its managing officers. However, she cannot use plaintiff corporation as an instrument to avoid and defeat the manifest purpose and intent of her own contract to release A.E. Knowlton from any liability for any claim existing at the time of the execution of the separation agreement. That this result was the intent of the parties is manifested by the fact that plaintiff corporation executed both the separation and escrow agreements, by both P.C. Knowlton and A.E. Knowlton signing on behalf of plaintiff corporation.

While there is an affidavit of one of the daughters of P.C. and A.E. Knowlton that, at the time, she was unaware of some of the transactions now complained of, the contents of the affidavit do not change the result, for no party has attempted to set aside any of the three agreements either based upon fraud or mistake. Moreover, *a direct action by plaintiff corporation* is attempted.

Our holding that plaintiff corporation cannot pursue this action with respect to claims existing at the time of the execution of the separation and escrow agreements does not extend to any claims that may not have been resolved between defendants and Pamela Knowlton or Suzzanne Schultz, or both, in accordance with the August 1971 agreement. That issue is not before us and is not determined herein. Also not before us and not determined herein are any claims that Pamela Knowlton and Suzzanne Schultz may have against either A.E. Knowlton

or P.C. Knowlton, or both, arising out of their (the parents') execution of the separation and escrow agreements on their own behalf *and* on behalf of plaintiff corporation. What we hold here is that P.C. Knowlton cannot avoid the effects of her own contracts by utilizing the vehicle of plaintiff corporation, where she is in control of all the voting stock of the corporation. In other words, under the circumstances of this case, we find that the releases are binding upon plaintiff corporation as an entity but not necessarily upon Pamela Knowlton and Suzzanne Schultz who are holders of nonvoting stock, if they can demonstrate that their interests have been adversely affected by the agreement between P.C. Knowlton and A.E. Knowlton.

Accordingly, the first assignment of error is overruled with respect to those claims which arose prior to the execution of the separation and escrow agreements and is sustained with respect to those claims which arose thereafter.

By the second assignment of error, plaintiff contends that the trial court erred in entering summary judgment because the motion was not yet ripe for decision since the trial court had not set a date for hearing pursuant to Civ. R. 56(C). While technically plaintiff is correct, no prejudice resulting from the error has been demonstrated. See Civ. R. 61. There is no indication that the result would have been different or that different evidence might have been before the trial court had the proper procedure been utilized. Plaintiff had an opportunity to, and did, file opposing evidence, including affidavits and opposing memoranda. There is no suggestion that plaintiff would have presented additional evidence had the procedure prescribed by Civ. R. 56(C) with respect to setting a date for hearing been followed.

The same is true with respect to plaintiff's contention that the "evidence" submitted by defendants was not properly authenticated by affidavit. Plaintiff makes no contention that the August 1971 transcript, the separation agreement, or the escrow agreement, as submitted by defendants, are not true and correct copies of the original, or that they were not executed by both A.E. Knowlton and P.C. Knowlton, both individually and on behalf of plaintiff corporation. While technically the documents should have been verified by affidavit in accordance with Civ. R. 56(E), failure to follow this procedure is not prejudicial in this case, inasmuch as there is no suggestion that the documents involved are not authentic or that the result would be different if the documents were properly authenticated. Finding no prejudice resulting from the technical error, the second assignment of error is not well-taken.

The third assignment of error, likewise, is not well-taken. While we have already indicated, with respect to the first assignment of error, that the trial court erred in granting summary judgment in favor of defendants with respect to Counts 11, 12 and 13, by no means is there a requirement that summary judgment be entered for plaintiff with respect to these claims. As to Count 11, A.E. Knowlton in his affidavit expressly denies the factual foundation for the claim, although admitting that a loss may have been sustained, and contends both that it was less in amount than that contended by plaintiff and that it was offset by tax benefits so as not to constitute a loss. Whether, and the extent to which, these contentions are proper defenses cannot be determined in summary judgment proceedings. The same is true with respect to Count 12. Although there is an affidavit of P.C. Knowlton in the record as to personal property she received from defendant A.E. Knowlton, there is no clear showing of the existence, or value, of any specific property alleged to have been converted sufficient to permit summary judgment in plaintiff's favor.

As to Count 13, A.E. Knowlton specifically stated in his affidavit that, to the

best of his knowledge, the note had been paid. Construing the affidavit most strongly in his favor, there are genuine issues of fact, namely, whether or not the note has been paid, which also is supported by the fact that the time that it was to have been paid was at a closing in May 1973, whereas, this action was not commenced until nearly four years later. There are genuine issues of fact existing with respect to these three claims, whether the evidence be construed most strongly in favor of plaintiff, or most strongly in favor of defendants, so that the trial court erred in entering summary judgment for defendants upon these three claims but did not err in refusing to enter judgment for plaintiff upon them.

By the fourth assignment of error, plaintiff contends that the trial court erred in entering a protective order precluding plaintiff from deposing its former attorney. While plaintiff correctly points out that it is entitled to waive the attorney-client privilege and have its former attorney testify, the issue is not that simplistic where the purported communication was made on behalf of the corporation by the defendant against whom the corporation now intends to use the evidence, and the attorney also represented the defendant at the time. Although far from clear in the record, apparently the attorney involved represented plaintiff and defendants with respect to the same transaction and received communication on behalf of plaintiff corporation and defendant corporation through defendant A.E. Knowlton, but not in the presence of any third person.

In other words, apparently the only natural person involved in a communication with the attorney was defendant A.E. Knowlton, although he communicated on behalf of one or more corporations, as well as himself. The attorney indicated in his deposition that there was no matter with respect to which he represented solely plaintiff corpora-

tion, but that the representation was intertwined with those of all the other corporations. However, it was not developed as to whether or not the attorney could in fact testify with respect to communications made on behalf of plaintiff corporation separately from the other corporations. In other words, information pertaining solely to plaintiff corporation would not be precluded merely because contemporaneous communications involving other corporations were also made by the same natural person. Nevertheless, upon the information before the trial court at the time, we cannot find an abuse of discretion. Plaintiff did not limit its inquiry upon the deposition to information concerning plaintiff corporation but, instead, also sought information from other companies, including defendant corporation. The trial court order is interlocutory and is subject to modification upon remand if plaintiff demonstrates the need therefor. Even assuming that the trial court order was overbroad, plaintiff has not demonstrated prejudice and has not indicated the existence of any information to which it is entitled and which it does not already possess. Under the circumstances, we find no prejudicial error, and the fourth assignment of error is not well-taken.

For the foregoing reasons, the first assignment of error is sustained in part and overruled in part and the remaining three assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is reversed; and this cause is remanded to that court with instructions to enter summary judgment in favor of defendants, with Civ. R. 54(C) findings, with respect to all those claims which arose prior to the execution by plaintiff, defendant A.E. Knowlton and P.C. Knowlton of the separation agreement and escrow agreement, but to overrule defendants' motion for summary judgment with respect to all claims arising since that date, including specifically Counts 11, 12 and 13 of plaintiff's com-

plaint, and for further proceedings in accordance with law consistent with this opinion.

*Judgment reversed and cause remanded with instructions.*

STRAUSBAUGH and NORRIS, JJ., concur.