[Cite as *Fowler v. Fimiani*, 2017-Ohio-9333.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| PATRICIA L. FOWLER, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2017-L-026** |
| CAROLYN J. FIMIANI, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2015 CV 001782.

Judgment: Affirmed.

*Michael C. Lucas,* Wiles and Richards, 37265 Euclid Avenue, Willoughby, OH 44094 (For Plaintiff-Appellant).

*Anthony J. Aveni*, Cannon, Aveni & Malchesky Co., L.P.A., 41 East Erie Street, Painesville, OH 44077 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Patricia L. Fowler ("Patricia"), appeals the summary judgment of the Lake County Court of Common Pleas in favor of appellee, Carolyn J. Fimiani ("Carolyn"). At issue is whether a genuine issue of material fact exists on Patricia's fraudulent misrepresentation and fraudulent concealment claims in connection with her purchase of Carolyn's home. For the reasons that follow, we affirm.

**{¶2}** On October 19, 2015, Patricia filed a complaint against Carolyn alleging breach of contract (first cause of action) and fraudulent misrepresentation/concealment (second cause of action). For her breach-of-contract claim, Patricia alleged that, in the course of her purchase of Carolyn's home in Mentor in 2014, Carolyn did not fully disclose all incidents of flooding in the basement of her home. For her fraud claim, Patricia alleged Carolyn made false representations concerning, or concealed, latent defects regarding water damage in her home to induce Patricia to buy it. Carolyn filed an answer denying the material allegations of the complaint.

**{¶3}** The statement of facts that follows is derived from the evidence submitted by the parties on summary judgment. Carolyn, who is a 77-year old widow, testified in deposition that she and her now deceased husband moved into their residence on Chillicothe Road in 1973, and in the following years, raised their four children there. She said that a 100-year flood occurred in Mentor in 2006. As a result of this flooding, Carolyn's basement – along with all the other basements in the area – had water damage. Carolyn and her husband hired a contractor to extract the water, replace drywall, and replace the tile flooring. In March 2007, Carolyn's husband passed away. In an effort to be proactive and prevent future problems, in the spring of 2007, Carolyn hired a contractor to waterproof the front and sides of the home.

**{¶4}** In 2009, Carolyn discovered some dampness in the basement so she hired another contractor who again waterproofed the front and sides of her home. Later that year, Carolyn saw some seepage near the back wall and also had that wall waterproofed.

{¶5} Carolyn said the 2009 waterproofing appeared to resolve the leakage problem because, for several years thereafter, there was no water in the basement.

{¶6} Then, in 2013, Mentor experienced a heavy rain that caused flooding generally in the area. Carolyn said there was 4" to 6" of water at one side of the basement. Thereafter, she hired a contractor, who removed the baseboards in that area, drilled some holes in the drywall under the baseboards and ran fans to dry out the area. The contractor then re-installed the baseboards, painted the drywall, and replaced some tile.

{¶7} In 2014, Carolyn decided to downsize and listed the property for sale with Howard Hanna. On the Ohio Residential Disclosure Form, when asked if there was any prior or current water intrusion in the basement, Carolyn answered, "yes." When asked to "describe and indicate any repairs completed," she wrote: "Water Flooding 2006 due to '100 year flooding.' Not sewer issue. Had front and sides of house waterproofed in 2007 and had back of house waterproofed in 2009." Patricia admitted in discovery that the only representations Carolyn made about the condition of the basement were those contained in the disclosure form.

{¶8} When asked in her deposition why she did not mention the 2013 flooding incident, Carolyn testified she thought it was an "exception" because it was an "act of God." She also said she did not think of it when filling out the form because she thought the water issue was resolved.

{¶9} Carolyn conceded that when she sold the house, there was no visible evidence of flooding or water damage in the basement. However, contrary to Patricia's argument, Carolyn never testified this lack of evidence was due to steps she took to

3

conceal the prior water intrusion and damage. Carolyn said she left the remaining repair materials (caulk, paint, and tiles) in the basement in case they were ever needed again.

**{¶10}** The parties signed a purchase agreement for the house in September 2014, which stated the house was being sold "as is," and included a contingency based on Patricia's acceptance of the results of a professional general home inspection.

**{¶11}** In the 15-page report prepared by Patricia's inspector, Mark Bornhorst, he stated, with respect to his findings and recommendations concerning the basement:

> **{¶12}** Horizontal, hairline crack noted across rear wall. * * * Horizontal cracks indicate possible frost action or soil expansion problems have occurred in the past. *This is typically due to poor backfill and drainage along foundation wall.* Excavation of foundation and backfill with free drainage gravel should have been done in waterproofing the foundation. *Verify that wall was properly backfilled with owner or waterproofing contractor.* (Emphasis added.)

**{¶13}** There is no evidence Patricia followed her inspector's recommendation to inquire into whether the foundation was properly waterproofed. Instead, following the inspection, she signed an amendment to the purchase offer, which removed the inspection contingency on the condition that Carolyn perform certain work to the house and pay an additional $600 toward Patricia's closing costs.

**{¶14}** Patricia stated in affidavit that in June 2015, during a rainstorm, water poured in through the basement walls and accumulated on the basement floor. She said that if she had been aware of the water problems and damage in 2008 and 2013, she would not have bought the home.

**{¶15}** On October 31, 2016, Carolyn filed a motion for summary judgment supported by evidentiary materials. Patricia filed a brief in opposition along with a motion to strike some of the documents attached to Carolyn's summary-judgment

4

motion as not having been properly authenticated. Thereafter, Carolyn filed a reply brief along with a motion to supplement her summary-judgment motion by including an affidavit authenticating the documents she submitted on summary judgment.

{¶16} The trial court entered judgment granting Carolyn's motion to supplement her motion for summary judgment; denying Patricia's motion to strike Carolyn's summary-judgment materials; and granting summary judgment in favor of Carolyn.

{¶17} Patricia appeals the trial court's judgment, asserting two assignments of error. For her first, she alleges:

{¶18} "The trial court erred in allowing the supplementation of the Appellee's Motion for Summary Judgment without affording the Appellant any opportunity to respond to the supplementary evidence."

{¶19} Patricia argues the trial court erred in granting Carolyn's motion to supplement her summary-judgment motion with an authenticating affidavit and in denying Patricia's motion to strike the exhibits Carolyn submitted on summary judgment, without giving Patricia an opportunity to respond to the affidavit.

{¶20} This court applies an abuse of discretion standard of review in ruling on a motion to strike evidence. *Hicks v. Cadle Co.*, 11th Dist. Trumbull No. 2014-T-0103, 2016-Ohio-4728, ¶23. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary 11 (8th Ed.2004).

{¶21} In Carolyn's motion for summary judgment, she attached eight documents without an affidavit authenticating them. These documents were:

{¶22} Exhibit A: Residential Property Disclosure Form

5

**{¶23}** Exhibit B: Purchase Agreement

**{¶24}** Exhibit C: Mortgage

**{¶25}** Exhibit D: Inspector's report

**{¶26}** Exhibit E: Amendment to Offer to Purchase and Removal of Contingency

**{¶27}** Exhibit F: Deed

**{¶28}** Exhibit G: Plaintiff's Discovery Responses

**{¶29}** Exhibit H: Defendant's Discovery Responses

**{¶30}** Patricia moved to strike six out of the eight documents (excluding Exhibits G and H, the parties' discovery responses) attached to Carolyn's summary-judgment motion. In her motion, Patricia argued these documents must be stricken from the motion for summary judgment because they were either not specifically authorized by Civ.R. 56(C) or authenticated by an affidavit per Civ.R. 56(E).

**{¶31}** In Carolyn's motion to supplement her summary-judgment motion, she attached her affidavit authenticating or providing certified copies of the six documents mentioned in Patricia's motion to strike.

**{¶32}** Civ.R. 56(C) provides in pertinent part: "Summary judgment shall be rendered forthwith if the *pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact,* if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Further, Civ.R. 56(E) provides in part: "Sworn or certified copies of all papers * * * referred to in an affidavit shall be attached to or served with the affidavit."

6

{¶33} While Exhibits A, B, and E (disclosure form, purchase agreement, and amendment to offer) were not authenticated by an affidavit, they were attached to Patricia's complaint. Moreover, Patricia alleged in her complaint, and Carolyn admitted in her answer, that these exhibits were true and accurate copies of the originals. Thus, these documents were properly submitted as pleadings or admissions per Civ.R. 56(C) and did not require authentication by affidavit.

{¶34} It is undisputed that Exhibit D, the inspection report, was produced by Patricia in response to Carolyn's combined interrogatories and requests for production of documents. For the reasons that follow, the report did not also need to be authenticated by affidavit.

{¶35} The Ohio Supreme Court has stated "there is no requirement in Civ.R. 56 that any party submit affidavits to support a motion for summary judgment. *See, e.g.*, Civ.R. 56(A) and (B)." *Dresher v. Burt*, 75 Ohio St.3d 280, 298 (1996). "There is a requirement, however, that a moving party, in support of a summary judgment motion, specifically point to something in the record that comports with the evidentiary materials set forth in Civ.R. 56(C)." *Dresher, supra*. The materials listed in that rule are "the pleadings, depositions, answers to interrogatories, written admissions, *affidavits*, transcripts of evidence, and written stipulations of fact, if any * * *." Thus, a motion for summary judgment may be supported by affidavit *or* other material(s) listed in Civ.R. 56(C). *Taylor v. Uhl*, 9th Dist. Lorain No. 13CA010441, 2014-Ohio-3090, ¶17.

{¶36} For example, in *Johnson v. Sears Roebuck & Co.*, 12th Dist. Clermont No. CA2000-03-017, 2000 WL 1145481 (Aug. 14, 2000), the court stated that documents may be considered on summary judgment where they are authenticated by affidavit or

identified as having been provided in response to interrogatories. *Id.* at *3. Here, since Patricia's expert report was part of her answers to Carolyn's interrogatories, the report was properly considered on summary judgment and did not need to be authenticated by affidavit.

{¶37} In any event, "[i]t has also been held that a court does not commit reversible error by considering documents not in accordance with Civ.R. 56(C) or (E) where there is no suggestion that the documents are not authentic or that the result would be different if the documents were properly authenticated." *Johnson, supra*, at *2, citing *Interntl. Bhd. of Elec. Workers v. Smith*, 76 Ohio App.3d 652, 660 (6th Dist.1992); *Knowlton Co. v. Knowlton*, 10 Ohio App.3d 82, 87 (10th Dist.1983), *reversed on other grounds at* 63 Ohio St.3d 677 (1992). Here, Patricia never argued that the copy of her expert report attached to Carolyn's motion for summary judgment was not authentic.

{¶38} Next, while the copies of the mortgage (Exhibit C) and the deed (Exhibit F) attached to Carolyn's summary-judgment motion were not certified, they were irrelevant to the issues on summary judgment, namely, fraudulent misrepresentation/concealment and justifiable reliance. In addition, Patricia never argued that these exhibits were not authentic.

{¶39} Patricia's reliance on *Hicks, supra,* is misplaced as the facts in that case are distinguishable. Hicks (who had filed a summary-judgment motion) filed a reply brief in which he raised *new arguments* not previously asserted and included *new evidentiary material* that was not previously attached. The trial court did not give the nonmovant an opportunity to respond to the new material. This court in *Hicks* stated

8

that when a new argument or new evidence is raised in a reply brief on summary judgment, the proper procedure is to strike the supplement or to allow the nonmovant an opportunity to respond to it. *Id.* at ¶18. This court stated that the danger in allowing a new argument or new evidence to be presented in a reply brief is that the nonmovant does not have an opportunity to respond.

{¶40} Here, Carolyn did not present any new argument or new evidence in her supplement; only an affidavit that authenticated (or presented certified copies of) the same documents presented by Carolyn in her initial summary-judgment motion. Unlike *Hicks*, here, Patricia does not dispute she was well aware of each of the documents submitted on summary judgment. Thus, none of these documents was new to Patricia and she had a full opportunity to address these documents in her opposition to summary judgment.

{¶41} In view of the foregoing, even if the challenged exhibits were not filed in compliance with Civ.R. 56 and Patricia did not have an opportunity to address Carolyn's authenticating affidavit, Patricia was not prejudiced. This is because she never argued the exhibits attached to Carolyn's summary-judgment motion were not authentic or that the result would have been different if the exhibits were properly authenticated. We therefore hold the trial court did not abuse its discretion in denying Patricia's motion to strike.

{¶42} For her second assignment of error, Patricia alleges:

{¶43} "The trial court erred in granting summary judgment in favor of the Appellee where genuine issues of material fact remained for trial as to the Appellant's claim for fraudulent concealment and fraudulent misrepresentation."

9

**{¶44}** Appellate courts review a trial court's grant of summary judgment de novo. *Alden v. Kovar*, 11th Dist. Trumbull Nos. 2007-T-0114 and 2007-T-0115, 2008-Ohio-4302, ¶34.

**{¶45}** In order for summary judgment to be granted, the moving party must prove that:

**{¶46}** (1) no genuine issue as to any material fact remains to be litigated,

**{¶47}** (2) the moving party is entitled to judgment as a matter of law, and

**{¶48}** (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996).

**{¶49}** [T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The "portions of the record" to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the * * * depositions, etc., that have been filed in the case. (Emphasis omitted.) *Dresher, supra,* at 296.

**{¶50}** If the moving party satisfies its burden, then the nonmoving party has the burden to provide evidence demonstrating the existence of a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E).

**{¶51}** "The elements which constitute the basis for a claim of fraudulent misrepresentation are: '(1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading

10

another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately cause by the reliance.'" *Kimball v. Duy*, 11th Dist. Lake No. 2002-L-046, 2002-Ohio-7279, ¶23, quoting *Cardi v. Gump*, 121 Ohio App.3d 16, 22 (8th Dist.1997).

**{¶52}** Thus, "[t]o prevail upon a claim for fraudulent misrepresentation, the injured party must establish justifiable reliance upon representations made by the defendants." *Massa v. Genco*, 11th Dist. Lake No. 89-L-14-162, 1991 WL 26761, *7 (Mar. 1, 1991).

**{¶53}** Further, to prevail on a claim of fraudulent concealment, the plaintiff has the burden to prove: "(1) an actual concealment[;] (2) of a material fact[;] (3) with knowledge of the fact concealed[;] (4) with intent to mislead another into relying upon such conduct[;] (5) followed by actual reliance thereon by such other person having the right to so rely[;] (6) and with injury resulting to such person because of such reliance[.]" *Bagdasarian v. Lewis*, 11th Dist. Lake No. 92-L-171, 1993 WL 419081, *2 (June 4, 1993).

**{¶54}** As noted above, the parties' purchase agreement contained a clause stating that Patricia was accepting the property "as is." An as is clause in a real estate purchase agreement relieves the seller from the duty to disclose latent defects. *Kimball, supra*, at ¶19. As a result, with an as is clause, a buyer is barred from bringing an action for fraudulent nondisclosure. *Id.* at ¶20. This court has also held that the presence of an as is clause in a purchase agreement bars a buyer's claim for breach of contract. *Tutolo v. Young,* 11th Dist. Lake No. 2010-L-118, 2012-Ohio-121, ¶52. The presence of an as is clause limits the buyer's claims against the seller to claims of

11

fraudulent misrepresentation and fraudulent concealment. *Id.* at ¶51. In other words, the seller must have actively misrepresented or concealed facts.

{¶55} We therefore agree with the trial court's finding, which Patricia does not appeal, that her claims for breach of contract and fraudulent non-disclosure fail as a matter of law because she purchased the home "as is."

{¶56} Patricia argues that her claims for fraudulent misrepresentation and fraudulent concealment were not barred by the as is clause because Carolyn was aware of existing problems in the home and failed to disclose them. In opposition, Carolyn argues that Patricia was not justified in relying on any statements or omissions in the disclosure form since Patricia's own inspector pointed out various defects related to the water-leakage problem.

{¶57} In the instant case, the purchase agreement was contingent upon completion of a professional, general home inspection that was acceptable to Patricia. She attempts to minimize the significance of this contingency by repeatedly referring to it as a simple "walk through inspection," which refers to the perfunctory walk-through Inspection to which buyers are typically entitled shortly before title transfer to verify the property is in the same condition it was in when the purchase agreement was signed. Patricia also incorrectly argues "the purpose of this contingency was of a limited nature and solely to confirm and verify the representations expressly made by [Carolyn]." There is no factual or legal support for this argument.

{¶58} This court has previously held that "[a] buyer cannot be said to have justifiably relied upon misrepresentations made by the seller where the agreement is clearly contingent upon the inspection rather than any alleged representations." *Kimball*

*supra,* at ¶24, quoting *Massa, supra,* at *8. Thus, even if Patricia could establish Carolyn's knowledge and misrepresentation of a material defect in the basement, her claim for fraudulent misrepresentation would still fail, as a matter of law, due to her inability to show justifiable reliance on the misrepresentation.

**{¶59}** With respect to Patricia's fraudulent-concealment claim, while it is true that after the 2013 flooding incident, Carolyn hired a contractor who dried the affected area with fans and then painted the drywall and replaced some tile, Carolyn testified she believed the water problem in the basement had been corrected in 2009 and that the 2013 incident was an anomaly that she did not expect would recur. Thus, it made sense that she would hire a contractor to perform this work to improve the cosmetic appearance of the basement. In and of itself, this did not provide any evidence that Carolyn had this work done to conceal water damage from prospective buyers in the event she might try to sell the home sometime in the future. In short, there is no evidence in this record that Carolyn did anything in an attempt to defraud Patricia.

**{¶60}** Contrary to Patricia's argument, Carolyn did *not* testify that she purposely failed to disclose the 2008 or 2013 instances of water intrusion or that she made any representations on the disclosure form that were untrue or fraudulent.

**{¶61}** In any event, Patricia would not have had a right to rely on any attempt to conceal by Carolyn because Patricia's inspector had no difficulty inspecting the foundation and basement. In fact, he discovered a horizontal crack across the rear basement wall, which, he said, indicated possible frost action or soil expansion problems had occurred in the past. He also said this is typically due to *poor backfill and drainage along the foundation wall.* Further, he said that excavation of the foundation

and backfill with free-draining gravel should have been done in waterproofing the foundation. And, he advised Patricia to verify with the owner or waterproofing contractor that the wall was properly backfilled.

{¶62} However, instead of following-up on her inspector's advice or terminating the contract, which she had the right to do per the inspection contingency, Patricia proceeded with the purchase and used the report to negotiate a better deal wherein Carolyn would perform certain repairs on the property and pay an additional $600 toward Patricia's closing costs. We agree with the following finding of the trial court:

> {¶63} Plaintiff's claims for fraudulent misrepresentation and concealment fail as a matter of law because Plaintiff's purchase was contingent on the home inspection, and therefore Plaintiff could not have justifiably relied on any misrepresentations in the Disclosure Form or any attempts to conceal the damage from the 2013 water intrusion. Finally, Plaintiff has not raised an issue of material fact with respect to "actual concealment" of the 2013 water intrusion, because the home inspection put her on notice of possible "poor backfill and drainage."

{¶64} We therefore hold the trial court did not err in entering summary judgment in favor of Carolyn on Patricia's fraudulent misrepresentation/concealment claim.

{¶65} For the reasons stated in this opinion, the assignments of error are overruled. It is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas is affirmed.


COLLEEN MARY O'TOOLE, J., concurs,

THOMAS R. WRIGHT, J., concurs in judgment only.

14