[Cite as *Rousana v. Nationwide Gen. Ins. Co.*, 2023-Ohio-3796.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STEVEN ROUSANA, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 112478 |
| v. | : | |
| NATIONWIDE GENERAL INSURANCE COMPANY, ET AL., | : | |
| Defendants-Appellees. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 19, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-957484

---

### *Appearances:*

Anthony D. Jordan, *for appellant*.

Bricker Graydon LLP and Jeffrey P. McSherry, *for appellee*.

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Plaintiff-appellant, Steven Rousana ("Rousana"), appeals an order granting summary judgment in favor of defendant-appellee, Nationwide General Insurance Company ("Nationwide"). He claims the following errors:

1. The trial court erred in finding that the appellant did not support his uninsured motorist claims by sufficient independent evidence pursuant to *Smith v. Erie Ins. Co.*, 148 Ohio St.3d 192 (2016).

2. The trial court erred in granting the appellee's summary judgment motion against appellant's bad faith claim by basing its judgment on the breach of contract claim where case law holds that the tort of bad faith is independent from the claim of breach of contract.

3. The trial court erred by granting summary judgment on the appellant's claim for fraud and misrepresentation.

4. The trial court erred when it granted summary judgment against the appellant's claim for the intentional infliction of emotional distress.

{¶ 2} We affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} In March 2019, Rousana was involved in a motor vehicle accident wherein he was rear-ended by another car. He alleges he sustained injuries as a result of the accident and that the accident was caused by a "hit-skip" or unknown driver. He presented a claim for uninsured motorist benefits to his auto insurer, Nationwide, and Nationwide offered a sum of money to resolve the claim, but the offer was not acceptable to Rousana. Consequently, Rousana filed a complaint against Nationwide, alleging claims for breach of contract, bad-faith negotiations and claims handling, fraud, and intentional infliction of emotional distress.

{¶ 4} During discovery, Nationwide took Rousana's deposition. Rousana identified two police reports and testified that the first report was made on March 27, 2019, the day of the accident ("first accident report"). (Rousana depo. tr. 60.) Rousana told the investigating officer that the first accident report was "incorrect," and a second report was made on April 7, 2019 ("second accident report"). Rousana

testified that the second accident report was 99 percent accurate. (Rousana depo. tr. 62.) The second accident report contains the following narrative description of the accident:

Driver of Unit 2 [Christian Compton] states he was traveling eastbound on Train Ave approaching 41 Street [sic] when driver of Unit 2 [Christian Compton] was unable to slow down in time and struck Unit 1 [Rousana] in the right passenger side. Unit 3 [unknown driver] was traveling behind Unit 2 [Christian Compton] and was also unable to stop in time. Driver of Unit 3 [unknown driver] struck Unit 2 [Christian Compton] in the rear bumper, then proceed to leave the scene.

(Rousana depo. exhibit No. 2.) It is undisputed that Rousana was the driver of Unit 1, Christian Compton ("Compton") was the driver of Unit 2, and that the driver of Unit 3 is unknown. It is also undisputed that Compton was insured by State Farm.

{¶ 5} Nowhere in the narrative description does it state that Unit 3 first hit Unit 2, which then caused Unit 2 to hit Unit 1. Rousana testified multiple times during his deposition that he only felt one impact. He explained that the first accident report was inaccurate because it indicated that he was struck twice. (Rousana depo. at 41.) He stated, "I heard one hit, not two hits." (Rousana depo. at 63-64.) Upon further questioning about the second accident report, Rousana testified:

Q: So the driver of Unit 2 hit you first, right?

A: I heard one hit.

Q: Okay.

A: That's all I heard.

Q: And that was when you — and that's when you got hit, right?

A: Yeah, that's it. Second hit I don't hear nothing. Or third. Only one I hear.

Q: So you don't know if Unit 2 was hit by 3 and pushed into you; is that right?

A: I'm not sure about that, no.

(Rousana depo. at 63, 69.)

{¶ 6} Nationwide filed a motion for summary judgment based on Rousana's testimony. Rousana filed a brief in opposition to the motion, which he supported with his own affidavit and the expert report of William J. Warfel, Ph.D., C.P.C.U., C.L.U. After considering the parties' briefs and evidence, the court granted summary judgment in favor of Nationwide on all claims. In reaching its decision, the trial court explained, among other things, that there was insufficient evidence establishing that Nationwide breached its contract with Rousana because Rousana failed to provide "independent corroborative evidence" demonstrating a breach. The court further held that Rousana's own testimony and statements to third parties, by themselves, were not sufficient to prove his claims. Rousana now appeals the trial court's judgment.

## II. Law and Analysis

### A. Standard of Review

{¶ 7} Appellate review of summary judgments is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, the party being entitled to have the evidence construed most

strongly in his or her favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus; *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 696 N.E.2d 201 (1998).

{¶ 8} The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996).

## B. Uninsured Motorist Coverage

{¶ 9} In the first assignment of error, Rousana argues the trial court erred in granting summary judgment in favor of Nationwide on his claim for uninsured motorist ("UM") coverage. He contends the court erred in finding that he did not support his UM claim with sufficient corroborative evidence. He asserts that his own testimony constitutes "independent corroborative evidence" of his entitlement to UM coverage.

{¶ 10} Rousana's claims are based on his rights under the contract of insurance he had with Nationwide. "An insurance policy is a contract whose interpretation is a matter of law." *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6. Courts examine the insurance contract

as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. *Id.* "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id.*

{¶ 11} "Where, however, the provisions of an insurance policy are 'reasonably susceptible to more than one interpretation,' the ambiguity in the policy language is construed against the insurer and liberally in favor of the insured." *Raudins v. Hobbs*, 2018-Ohio-2309, 104 N.E.3d 1040, ¶ 26 (8th Dist.), quoting *Sharonville* at ¶ 6. In any case, a court is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties. *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 597 N.E.2d 499 (1992). Nor may the court employ a general rule of liberal construction to create an ambiguity where one does not exist. *Progressive Ins. Co. v. Heritage Ins. Co.*, 113 Ohio App.3d 781, 784 682 N.E.2d 33 (8th Dist.1996), citing *Karabin v. State Auto Mut. Ins. Co.*, 10 Ohio St.3d 163, 166, 462 N.E.2d 403 (1984).

{¶ 12} Part C of Rousana's Nationwide policy governs UM coverage and states, in relevant part:

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner of:

* * *

2. An "uninsured motor vehicle" as defined in Paragraph 3 of the definition of an "uninsured motor vehicle" because of "bodily injury" sustained by an "insured."

{¶ 13} Paragraph three of the definition of an "uninsured motor vehicle" states, in relevant part:

"Uninsured motor vehicle" means a land motor vehicle or trailer * * * [w]hich is a hit-and-run vehicle whose operator or owner cannot be identified and which hits * * *

a. You or any "family member";

b. A vehicle which you or any "family member" are occupying; or

c. "Your covered auto."

{¶ 14} It is undisputed that Rousana is an "insured" under the Nationwide policy. The issue here is whether there is evidence establishing that Rousana was injured by an "uninsured motor vehicle."

{¶ 15} R.C. 3937.18 governs UM coverage and states, in relevant part:

(B)(1) For purposes of any uninsured motorist coverage included in a policy of insurance, an "uninsured motorist" is the owner or operator of a motor vehicle if any of the following conditions applies:

* * *

(c) The identity of the owner or operator cannot be determined, but independent corroborative evidence exists to prove that the bodily injury, sickness, disease, or death of the insured was proximately caused by the negligence or intentional actions of the unidentified operator of the motor vehicle. *For purposes of division (B)(1)(c) of this section, the testimony of any insured seeking recovery from the insurer shall not constitute independent corroborative evidence, unless the testimony is supported by additional evidence.*

(Emphasis added.) R.C. 3937.18(B)(1)(c). Rousana's Nationwide policy tracks the language of R.C. 3937.18(B)(1)(c) and similarly provides:

The facts of the accident or intentional act must be proved. We will only accept independent, corroborative evidence to prove that the "bodily injury," sickness, disease or death of the "insured" was proximately caused by negligence or intentional actions of the unidentified operator of the motor vehicle. *For the purposes of this section, the testimony of any "insured" seeking recovery from the insurer shall not constitute independent, corroborative evidence, unless the testimony is supported by additional evidence.*

(Emphasis added.) (Nationwide Policy, Part C — UM Coverage at C(3)(c).) Thus, R.C. 3937.18(B)(1)(c) and the UM endorsement set forth in Part C of Rousana's Nationwide policy preclude the use of the insured's testimony from being considered as independent, corroborative evidence of the insured's entitlement to UM coverage under the insured's own policy unless it is supported by "additional evidence."

{¶ 16} Rousana nevertheless maintains the trial court erred by not considering his testimony as evidence that Nationwide breached its promise to provide him UM coverage under the policy. He cites *Smith v. Erie Ins. Co.*, 148 Ohio St.3d 192, 2016-Ohio-7742, 69 N.E.3d 711, in support of his argument. In *Smith*, the court found that the trial court erred in granting summary judgment to the insurer because under the policy language, the insured's testimony may constitute "independent corroborative evidence" if that testimony is supported by additional evidence. *Id.* at ¶ 20. Moreover, the policy language at issue in *Smith*, which is virtually identical to the policy language in Rousana's Nationwide policy, only required "additional evidence—not necessarily third-party testimony—supporting the causation testimony of the insured." *Id.* Thus, Rousana argues, his testimony was sufficient to prove that Nationwide breached its promise to insure him against injuries caused by an "uninsured motor vehicle."

{¶ 17} We agree that Rousana's testimony could be considered to establish his UM claim if it is corroborated by "additional evidence." The issue is not the admissibility of this evidence. The problem is that Rousana's testimony does not support his claim for UM coverage because it does not establish that he was injured by an uninsured motorist. Rousana testified that he only experienced one impact during the accident and that he does not know if Unit 3, the unidentified driver who left the scene, caused the accident. He also testified that he did not know if Unit 2 was hit by Unit 3, which pushed Unit 2 into Rousana's car. (Rousana depo. at 63.). He stated that he only heard "one hit" and that he was only hit by Unit 2. (Rousana depo. at 63.). Therefore, his own testimony establishes that he was only struck by Unit 2.

{¶ 18} It is undisputed that Unit 2 was operated by Compton, who was insured by State Farm. Thus, Unit 2 was not an uninsured vehicle operated by an uninsured motorist. Although the driver of Unit 3 may fit the definition of an "uninsured motorist" under R.C. 3937.18(B)(1)(c) and Part C of the Nationwide policy, Rousana's testimony fails to establish that Unit 3 caused the accident and his injuries.

{¶ 19} The two police reports documenting the crash also fail to support Rousana's claim that his injuries were caused by an uninsured motor vehicle. They are wholly consistent with Rousana's testimony that only Unit 2 (Compton's insured vehicle) struck Rousana. Moreover, neither of the two accident reports state that Unit 3 first hit Unit 2 and pushed Unit 2 (Compton's insured vehicle) into Rousana's

vehicle. The first accident report does not even mention Unit 3. Therefore, the police reports do not support Rousana's claim that Unit 3 caused his injuries.

{¶ 20} Rousana contends that his experts establish that he has a valid UM claim. He claims that his first expert, Dr. William J. Warfel, Ph.D., C.P.C.U., C.L.U., incorporated the medical expert report of Dr. Hyo Kim, and that together they prove that Rousana was injured by an uninsured motorist. Nationwide moved to strike Dr. Warfel's expert report on grounds that it contains inadmissible hearsay and conclusory legal assertions unsupported by facts or personal knowledge. The trial court never ruled on the motion. Nevertheless, we agree that Dr. Warfel has no personal knowledge regarding the cause of the accident. Rousana offered Dr. Warfel's opinion as an expert in claims handling; he is not an accident reconstructionist. His opinions regarding the cause of the accident are based solely on the police reports and are, therefore, inadmissible. *See Butler v. Young*, 8th Dist. Cuyahoga No. 73549, 1999 Ohio App. LEXIS 32 (Jan. 14, 1999) ("Police reports and private investigator's statements are not materials authorized by Civ.R. 56(C) for consideration on a motion for summary judgment.").

{¶ 21} After reviewing all the evidence in the record, including Rousana's testimony, we find no evidence that Rousana is entitled to UM coverage because there is no evidence that he is "legally entitled to recover" from an uninsured motorist as required for UM coverage under Part C — (A)(1) of the Nationwide policy. Having failed to demonstrate that he is entitled to UM coverage under the policy, Rousana cannot establish a claim for breach of contract under the policy.

{¶ 22} Therefore, the first assignment of error is overruled.

## C. Bad Faith

{¶ 23} In the second assignment of error, Rousana argues the trial court erred in granting Nationwide's motion for summary judgment on his bad-faith claim. He contends the trial court erroneously concluded that the bad-faith claim was contingent on there being a valid breach-of-contract claim. He asserts that the tort of bad faith is independent from his breach-of-contract claim.

{¶ 24} A bad-faith claim is an independent cause of action, but it is nonetheless predicated on the relationship between an insurer and its insured. In *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983), the Ohio Supreme court explained that an insurer has a duty to act in good faith in handling the insured's claim. *Id.* at 275. Liability for bad faith "arises from the breach of the positive legal duty imposed by law due to the relationship of the parties." *Id.*, citing *Battista v. Lebanon Trotting Assn.*, 538 F.2d 111, 118 (6th Cir.1976) (construing Ohio law). "This legal duty is the duty imposed upon the insurer to act in good faith and its bad faith refusal to settle a claim is a breach of that duty and imposes liability sounding in tort." *Id.*

{¶ 25} However, the mere refusal to pay a claim does not automatically give rise to bad faith liability. In *Hoskins*, the court further explained:

Mere refusal to pay insurance is not, in itself, conclusive of bad faith. But when an insure[r] insists that it was justified in refusing to pay a claim of its insured because it believed there was no coverage of the claim, " * * * such a belief may not be an arbitrary or capricious one. The conduct of the insurer must be based on circumstances that furnish reasonable justification therefor."

*Id.* at 277, quoting *Hart v. Republic Mut. Ins. Co.*, 152 Ohio St. 185, 87 N.E.2d 347 (1949). *See also Finger v. Liberty Mut. Personal Ins. Co.*, 8th Dist. Cuyahoga No. 112349, 2023-Ohio-2308, ¶ 48, quoting *Barbour v. Household Life Ins. Co.*, N.D.Ohio No. 1:11 CV 110, 2012 U.S. Dist. LEXIS 46004, 13 (Apr. 2, 2012), quoting *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir.1992). ("""The test, therefore, is not whether the insurer's decision to deny benefits was correct but whether the decision to deny benefits was arbitrary or capricious and there existed a reasonable justification for the denial."""). Obviously, an insurer has a reasonable justification for denying a claim if there is no coverage for the claim. *See, e.g., Bailey v. Topline Restaurants, Inc.*, 10th Dist. Franklin No. 11AP-359, 2012-Ohio-1759, ¶ 31 (Claims for breach of contract and bad faith were moot where there was no coverage under the insurance policy.).

{¶ 26} Rousana was not entitled to UM coverage under the Nationwide policy because the undisputed evidence demonstrates that he was struck and allegedly injured by an insured motorist. Nationwide, therefore, had a reasonable justification for denying UM benefits; there was no coverage. Rousana cannot establish a prima facie case of bad faith in the absence of a valid claim for coverage.

{¶ 27} The second assignment of error is overruled.

### D. Fraud

{¶ 28} In the third assignment of error, Rousana argues the trial court erred in granting summary judgment in favor of Nationwide on his fraud claim. Rousana alleged that Nationwide committed fraud when it advertised that "Nationwide is on

your side," but then denied his claim and was "not on his side." He argues that the advertisements "proved to be a campaign of false misrepresentations of material facts that he relied on." (Appellant's brief at 24.) He alleged in the complaint that "Nationwide knowingly misrepresented material information about their respective policy's [sic] and for the payment of claims, as inducement for plaintiff's business and patronage." (Complaint ¶ 30.) He also alleged that Nationwide made these material misrepresentations "maliciously, and with knowledge of their falsity." (Complaint ¶ 32.)

{¶ 29} To establish a fraud claim, the plaintiff must demonstrate (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55, 514 N.E.2d 709 (1987); *Mobley v. James*, 8th Dist. Cuyahoga No. 108470, 2020-Ohio-380, ¶ 32.

{¶ 30} There is no evidence in the record demonstrating that Nationwide's advertisements provided any material misrepresentations regarding the terms of Rousana's insurance. We agree with the trial court, which noted in its judgment entry that the slogan "Nationwide is on your side" is simply a slogan intended to catch the attention of potential customers shopping for automobile insurance.

There is no evidence that the advertisements provided any detailed promises of specific coverages or that Nationwide knowingly or recklessly made misrepresentations.

{¶ 31} Nationwide provided a standard policy of automobile insurance. Rousana failed to demonstrate that he was entitled to coverage under the policy because he failed to establish that he was injured by an uninsured motorist. There is no evidence that Nationwide promised to provide coverage for any and all injuries, including those caused by insured drivers. There simply is no evidence of fraud.

{¶ 32} The third assignment of error is overruled.

### E.  Intentional Infliction of Emotional Distress

{¶ 33} In the fourth assignment of error, Rousana argues the trial court erred in granting summary judgment in favor of Nationwide on his claim for intentional infliction of emotional distress. Rousana alleged that Nationwide's bad faith handling of his claim caused him extreme emotional distress. (Complaint ¶ 28.)

{¶ 34} Intentional infliction of emotional distress occurs when "one who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another." *Yeager v. Local Union 20, Teamsters,* 6 Ohio St.3d 369, 374, 453 N.E.2d 666 (1983), *abrogated on other grounds, Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051.

{¶ 35} To establish a claim of intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant either intended to cause emotional distress, or knew or should have known that its conduct would result in serious

emotional distress to the plaintiff; (2) the defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered utterly intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious emotional distress of a nature no reasonable person could be expected to endure. *Stancik v. Deutsche Natl. Bank*, 8th Dist. Cuyahoga No. 102019, 2015-Ohio-2517, ¶ 43, citing *Rhoades v. Chase Bank*, 10th Dist. Franklin No. 10AP-469, 2010-Ohio-6537, ¶ 15.

{¶ 36} In granting summary judgment to Nationwide on Rousana's intentional infliction of emotional distress claim, the trial court observed:

Plaintiff was involved in a car accident from which he remembers one impact on his car. He contacted his insurance company, Nationwide, and put in a claim. Nationwide offered him a payment, albeit one that Plaintiff considered low in relation to the medical expenses he claimed he paid as a result of the injuries he sustained. Finally, when the parties reached an impasse in their negotiations, this lawsuit followed. While this Court does not discount the frustration Plaintiff feels as a result of this process, his circumstances are not unique, as many injured insureds resort to use of the judicial system in the hopes of obtaining a better offer from their insurance company. In viewing these facts in a light most favorable to Plaintiff, Nationwide's conduct cannot be seen as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *McKee* [*v. McCann*, 8th Dist. Cuyahoga No. 104956, 2017-Ohio-7181,] ¶ 11.

We agree that Rousana's disappointment with the claims process is not unique and that Nationwide's low settlement offer was reasonable in light of the fact that Rousana's UM claim was not covered under the policy. There is, therefore, no evidence that Nationwide's management of Rousana's claim under these circumstances "was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered utterly intolerable in a civilized community." *Stancik* at ¶ 43.

{¶ 37} Accordingly, the fourth assignment of error is overruled.

{¶ 38} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
SEAN C. GALLAGHER, J., CONCUR