[Cite as *Williams v. D&J House Doctors, L.L.C.*, 2025-Ohio-4716.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

RACHEAL WILLIAMS,

    PLAINTIFF-APPELLANT,

v.

D & J HOUSE DOCTORS, LLC, ET AL.,

    DEFENDANTS-APPELLEES.

CASE NO. 13-25-08

OPINION AND
JUDGMENT ENTRY

Appeal from Seneca County Common Pleas Court
Trial Court No. 21 CV 0230

Judgment Affirmed

Date of Decision:  October 14, 2025

APPEARANCES:

    *Anthony J. Richardson, II* for Appellant

    *Bradley S. Warren* for Appellee

**WILLAMOWSKI, J.**

{**¶1**} Plaintiff-appellant Racheal Williams ("Williams") appeals the judgment of the Seneca County Court of Common Pleas, arguing that the trial court erred in granting summary judgment. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{**¶2**} In May of 2021, Williams submitted an offer to purchase a house that had been owned by Brice Taylor ("Taylor") since July of 2017. As part of this process, she was given a residential disclosure form in which Taylor represented that he did not "know of any water or moisture related damage to floors, walls, or ceilings as a result of flooding; moisture seepage; moisture condensation[.]" (Doc. 37, Ex. C). He also indicated that he was not aware of any water intrusion, leakage, accumulation, or excess moisture.

{**¶3**} On May 26, 2021, Williams and Taylor signed a purchase agreement that contained an "as is" clause and made the transaction contingent upon a home inspection. After walking through the house and examining the premises on three or four occasions, Williams hired a person from D&J House Doctors, LLC ("D&J House Doctors"), to perform an inspection. By this point, the house was vacant as Taylor had already moved to a new location in April of 2021.

{¶4} After the inspection was completed, Williams closed on the house on July 23, 2021 and moved onto the premises. In this timeframe, Williams obtained a homeowner's insurance policy from American Family Insurance Company ("AFI") that had an effective date of August 5, 2021. This policy contained an exclusion for losses caused by "Continuous or Repeated Seepage." (Doc. 16, Ex. A).

{¶5} On August 18, 2021, Williams's son discovered mold on the floors of the two side-by-side closets in the master bedroom. On further examination, Williams found that this mold went several feet up the closet walls and was beginning to appear on the other side of the closet wall in the kitchen. On November 29, 2021, Williams filed a complaint that named D&J House Doctors as a defendant.

{¶6} In November of 2021, Williams also filed a claim with AFI. In response, AFI hired a leak specialist to examine Williams's property. On December 13, 2021, the leak specialist submitted a report to AFI.[1] While examining the premises, the specialist did not locate any active leaks in the areas with mold damage. On March 2, 2022, AFI denied Williams's insurance claim in a letter that quoted the policy exclusion for losses caused by "Continuous or Repeated Seepage." (Doc. 37, Ex. R).

---

[1] AFI referenced this report in its motion for summary judgment "simply to show that American Family did investigate the claim" and did not rely on the truth of the matters asserted therein to establish "the cause of the water intrusion." (Doc. 43).

{¶7} On May 16, 2022, Williams filed an amended complaint that included Taylor and AFI as defendants. Williams raised breach of contract, nondisclosure, negligent misrepresentation, and fraudulent misrepresentation claims against Taylor. She also raised breach of contract and bad faith claims against AFI.

{¶8} On January 19, 2023, Williams had a general contractor, Joseph Schlosser ("Schlosser"), examine the mold damage in her house. In a deposition on May 15, 2023, Schlosser stated that he could not reach a conclusion as to the cause of the mold damage without pulling up the flooring but suggested that the absence of a moisture barrier under the solid surface flooring may have led to the mold damage.

{¶9} During the summer of 2023, Schlosser returned to Williams's house and pulled up the flooring to further examine the condition of the property. He then wrote a report that stated he believed the mold damage in the closets was caused by the failure to install a moisture barrier under the flooring in the house. However, he did not reach a conclusion as to what caused the water intrusion that led to the mold damage.

{¶10} On November 20, 2023, AFI filed a motion for summary judgment. Taylor and Williams filed motions for summary judgment on November 27, 2023. After AFI and Taylor had filed briefs in opposition to Williams's motion for

summary judgment, she filed an affidavit and report from Schlosser on January 18, 2024.

{¶11} The trial court issued a judgment entry on January 31, 2025 that denied Williams's motion for summary judgment and granted summary judgment in favor of Taylor and AFI. In reaching these decisions, the trial court noted that Williams had failed to establish the source, cause, and timing of the water intrusion that led to the mold damage in her house. While Taylor had moved to strike Schlosser's affidavit, the trial court referenced this document in its judgment entry. The claims against D&J House Doctors were dismissed without prejudice for failure to perfect service.

{¶12} Williams filed her notice of appeal on February 24, 2025. On appeal, she raises the following three assignments of error:

### First Assignment of Error

**The Trial Court did not properly weigh the evidentiary material in the record when deciding that there was no genuine issue of material fact sufficient to give Appellant her day in court.**

### Second Assignment of Error

**Granting Brice Taylor's Motion for Summary Judgment was inappropriate because Appellant produced sufficient evidence of a substantial latent defect that was either created or concealed by Brice Taylor and therefore the 'as is' language in the Purchase Agreement is inapplicable for purposes of dismissing Appellant's claims.**

**Third Assignment of Error**

**The Trial Court erred by granting American Family Insurance's Motion for Summary Judgment because Appellant produced sufficient evidentiary material to create a genuine issue of material fact as to the source and timing of the water and mold damage and Appellant's claims must be decided by a jury.**

*Legal Standard for Summary Judgment*

{¶13} Appellate courts review an order granting summary judgment de novo. *LVNV Funding LLC v. Culgan*, 2023-Ohio-4706, ¶ 5 (3d Dist.). Under Civ.R. 56, a motion for summary judgment may be granted where no genuine issue of material fact exists for trial; the moving party is entitled to judgment as a matter of law; and reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Williams v. ALPLA, Inc.*, 2017-Ohio-4217, ¶ 5 (3d Dist.).

{¶14} In making a motion for summary judgment, the moving party bears the initial burden of demonstrating that no genuine issue of material fact exists for trial and that it is, therefore, entitled to judgment as a matter of law. *James B. Nutter & Co. v. Estate of Neifer*, 2016-Ohio-7641, ¶ 5 (3d Dist.). The moving party need not produce evidence to carry this burden but is required to identify the materials in the record that indicate summary judgment is appropriate. *Kent v. Motorists Mutual Insurance Company*, 2022-Ohio-1136, ¶ 8 (3d Dist.).

{¶15} If the moving party carries its initial burden, the burden then shifts to the non-moving party to establish that a dispute over a genuine issue of material fact

exists for trial. *Hall v. Kosei St. Marys Corporation*, 2023-Ohio-2021, ¶ 6 (3d Dist.). To defeat the motion for summary judgment, the non-moving party must do more than issue mere denials but must identify specific facts that establish its position. *Gardner v. XPO Logistics Freight, Inc.*, 2024-Ohio-4633, ¶ 10 (3d Dist.).

**{¶16}** Since an award of summary judgment can terminate the litigation, trial courts should grant motions for summary judgment with caution. *Beair v. Management & Training Corp.*, 2021-Ohio-4110, ¶ 18 (3d Dist.). Accordingly, courts must resolve any doubts and construe all the evidence in favor of the non-moving party. *Durnell's RV Sales Inc. v. Beckler*, 2023-Ohio-3565, ¶ 29 (3d Dist.).

### First Assignment of Error

**{¶17}** Williams argues that the trial court's failure to name certain exhibits in its judgment entry indicates that the trial court did not review all of the relevant materials in the record and constitutes reversible error.

### Legal Standard

**{¶18}** "The wording of Civ.R. 56(C) makes it clear that a trial court must conscientiously examine all the evidence before it when ruling on a summary judgment motion." *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 (1992). Since "Civ.R. 56(C) places a mandatory duty on a trial court to thoroughly examine all appropriate materials filed by the parties," a trial court's failure "to comply with this requirement constitutes reversible error." *Id*. at 360.

Legal Analysis

{¶19} In this case, Williams attached four exhibits and a number of pictures to her motion for summary judgment. On appeal, she asserts that the trial court failed to review several of the exhibits attached to her motion for summary judgment. The only basis that Williams provides for this assertion is the fact that the judgment entry did not expressly mention each of these exhibits by name.

{¶20} However, the first paragraph of the judgment entry named seventeen filings from the parties that the trial court reviewed before reaching its decision. This list included the motions for summary judgment from Williams, AFI, and Taylor. At least twenty-three exhibits were submitted with these three motions for summary judgment. The fact that the judgment entry did not separately name each of these twenty-three exhibits does not establish that the trial court did not review these evidentiary materials.

{¶21} In conclusion, the judgment entry expressly indicates that the trial court reviewed the contents of Williams's motion for summary judgment. The trial court's analysis also relied on several exhibits that were submitted with the three motions for summary judgment. In light of this statement and the other materials in the record, Williams has failed to establish that the trial court did not consider the exhibits that she included in her motion for summary judgment. Accordingly, the first assignment of error is overruled.

*Second Assignment of Error*

**{¶22}** Williams argues that summary judgment should not have been granted because she established that a genuine issue of material fact existed for trial as to whether Taylor knew about or concealed the conditions at issue.

Legal Standard

**{¶23}** R.C. 5302.30(C) requires the seller of qualifying residential properties to complete a disclosure form. This document is designed to elicit disclosure of "material matters relating to the physical condition of the property to be transferred, including . . . any material defects in the property that are within the actual knowledge of the transferor." R.C. 5302.30(D).

> Historically, unless a purchase agreement contained an 'as is' clause, sellers of real property were required to disclose latent defects, i.e., hidden defects, of which they were aware. *See, e.g.*, *Layman v. Binns*, 35 Ohio St.3d 176, 178, 519 N.E.2d 642 (1988). But under the doctrine of caveat emptor, they were not required to disclose patent defects, that is, defects that would be readily observable through a reasonable inspection. *Id*. at 177-178, 519 N.E.2d 642.

*Ashmus v. Coughlin*, 2025-Ohio-2412, ¶ 18. Now, R.C. 5302.30 "requires sellers of real estate to disclose patent or latent defects within their actual knowledge . . . ." *Rodgers v. Sipes*, 2012-Ohio-3070, ¶ 38 (3d Dist.).

**{¶24}** "The statute further requires that any disclosure be made in good faith or with 'honesty in fact in a transaction.'" *Shannon v. Fischer*, 2020-Ohio-5567, ¶ 18 (12th Dist.), quoting R.C. 5302.30(A)(1). Under R.C. 5302.30(F)(1),

[a] transferor of residential real property is not liable in damages in a civil action for injury, death, or loss to person or property that allegedly arises from any error in, inaccuracy of, or omission of any item of information required to be disclosed in the property disclosure form if the error, inaccuracy, or omission was not within the transferor's *actual knowledge*.

(Emphasis added.) R.C. 5302.30(F)(1). Thus, "under . . . R.C. 5302.30, sellers are not required to disclose latent defects of which they lack actual knowledge." *Brown v. Burnett*, 2020-Ohio-297, ¶ 29 (2d Dist.).

{¶25} While R.C. 5302.30 "modifies the common-law duty of disclosure in certain respects," this provision "does not create an independent cause of action[.]" *Ashmus* at ¶ 17. For this reason, "a buyer's remedy for nondisclosure is limited to common-law claims for fraud." *Id*., citing *Majoy v. Hord*, 2004-Ohio-2049, ¶ 17 (6th Dist.) (holding that "a violation of R.C. 5302.30 does not equal fraudulent misrepresentation per se").

{¶26} Where a purchase agreement indicates "that the property is being sold in its 'as is' present physical condition[,] . . . the buyer has agreed to 'make his or her own appraisal and accept the risk of making the wrong decision." *Mobley v. James*, 2020-Ohio-380, ¶ 35 (8th Dist.), quoting *McDonald v. JP Dev. Group, L.L.C.*, 2013-Ohio-3914, ¶ 15 (8th Dist.). If a purchase agreement contains an "as is" clause, then claims of "passive nondisclosure" will generally be precluded. *Mobley* at ¶ 35.

{**¶27**} "However, an 'as is' clause will not bar a claim for positive fraud, 'that is, a fraud of commission rather than omission . . . .'" *Majoy* at ¶ 18. For this reason, an "as is" clause generally "limits the buyer's claims against the seller to claims of fraudulent misrepresentation and fraudulent concealment" where the seller is shown to "have actively misrepresented or concealed facts." *Fowler v. Fimiani*, 2017-Ohio-9333, ¶ 54 (11th Dist.).

{**¶28**} An "as is" clause does not shield a seller from liability for fraudulent misrepresentations on a residential property disclosure form. *Morgan v. Cohen*, 2019-Ohio-3662, ¶ 39 (8th Dist.).

> To establish a cause of action for fraudulent misrepresentation or concealment, a plaintiff must prove: (1) a representation or, when a duty to disclose exists, concealment of a fact, (2) material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent to mislead another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.

*Thackston v. Zembower*, 2023-Ohio-1690, ¶ 19 (7th Dist.), quoting *Hubbard Family Trust v. TNT Land Holdings, LLC*, 2014-Ohio-772, ¶ 22 (4th Dist.).

> Unlike a determination of negligence, evidence or expert opinions that a party 'should have known' of the condition . . . do not create an issue of fact as to fraud because a finding of fraud requires proof that a defendant had actual knowledge of the alleged defect and proof that he or she purposely misrepresented or concealed it.

*Diemert v. Binstock*, 2019-Ohio-3368, ¶ 25 (8th Dist.).

{¶29} Finally, "R.C. 5302.30(D)(1) provides that the disclosure form is 'not a warranty of any kind by the transferor,' nor is it 'a substitute for any inspections.'" *Ashmus*, 2025-Ohio-2412, at ¶ 19.  Thus, "[t]he duty under the statute to conduct a full inspection falls upon the buyer, not the seller."  *Evon v. Walters*, 2021-Ohio-3475, ¶ 17 (11th Dist.), quoting *Pedone v. Demarchi*, 2007-Ohio-6809, ¶ 32 (8th Dist.).  "[W]here the buyer 'has had the opportunity to inspect the property, he is charged with knowledge of the conditions that a reasonable inspection would have disclosed.'"  *Nieberding v. Barrante*, 2021-Ohio-2593, ¶ 23 (8th Dist.), quoting *Nunez v. J.L. Sims Co., Inc.*, 2003-Ohio-3386, ¶ 17 (1st Dist.).

Legal Analysis

{¶30} On appeal, Williams acknowledges that the purchase agreement contains an "as is" clause.  However, she points out that such a provision does not shield a seller from fraudulent misrepresentation or fraudulent concealment. Williams asserts that she established that a genuine issue of material fact exists for trial as to whether Taylor knew about or concealed the conditions at issue in this case.  She raises two main arguments against the trial court's decision to grant Taylor's motion for summary judgment.

{¶31} First, Williams argues that Taylor's negligent failure to install a moisture barrier underneath the flooring he replaced led to the mold damage.  In his affidavit, Taylor did state that he replaced the flooring in the kitchen and living room

-12-

of the house. But even if Taylor's failure to install a moisture barrier eventually led to the mold damage, this still does not establish that he knew about or concealed this condition. Thus, Williams's first argument fails to establish that her claims against Taylor are not barred by the "as is" clause in the purchase agreement. *See also Tutolo v. Young*, 2012-Ohio-121, ¶ 52 (12th Dist.) (concluding that an "as is" clause bars claims based upon the seller's negligent construction).

{¶32} Second, Williams argues that Schlosser gave an expert opinion in his affidavit that creates a genuine issue of material fact as to whether Taylor knew about or concealed the identified conditions. Schlosser stated that the flooring and the paint in the house "seemed" to indicate "that the previous owner covered up damage to the home caused by perpetual water intrusion or moisture." (Doc. 52).

{¶33} In response, Taylor first argues that Schlosser gave a speculative assertion about what "seemed" to be the case rather than offering an expert opinion that is expressed in terms of probability or to a reasonable degree of certainty. *See Scioto Land Company, LLC v. Knauff*, 2023-Ohio-4821, ¶ 51 (4th Dist.) (discussing the basic requirements for expert opinions). He also points out that the conclusion Schlosser gave in his affidavit directly contradicted the conclusion that he had previously given on the same issue in the following deposition testimony:

> [Attorney:] Did you see any evidence of an attempt to conceal the condition of this house when you did your walk-through?
>
> [Schlosser:] *Not at the moment, no*.

(Emphasis added.) (Schlosser Depo. 45). Schlosser's affidavit contains no explanation as to why he gave opposite conclusions on the issue of whether he observed any indications that Taylor may have taken steps to conceal the water intrusion or mold damage.[2]

**{¶34}** Beyond these initial arguments, Taylor contends that Schlosser's opinion is speculative because he did not identify any facts or evidence in the record that could support his conclusion.

> 'Evid.R. 702 permits experts to testify as to their opinion, and even their opinion as to the ultimate issue under Evid.R. 704. Evid.R. 703 and 705, however, require that the expert establish the basis from which they draw the inferences for their expert opinion.' [*Estate of Holley v. Am. Family Life Assur. Co. of Columbus*, 2005-Ohio-2281, ¶ 24.] . . . . Furthermore, 'an expert witness may have an opinion based on inferences drawn from facts as provided for in Evid.R. 703.' *Estate of Holley*, at ¶ 25. However, an expert witness cannot reach a conclusion where one inference is based upon another inference. *Id*.

*Cole v. Contract Framing, Inc.*, 2005-Ohio-4244, ¶ 16 (10th Dist.). Thus, "conclusory affidavits that merely provide legal conclusions or unsupported factual assertions are . . . insufficient to establish a genuine issue of material fact." *Adkins v. Yamaha Motor Corp., U.S.A.*, 2014-Ohio-3747, ¶ 17 (4th Dist.), quoting *Moore v. Smith*, 2008-Ohio-7004, ¶ 15 (4th Dist.).

---

[2] In his affidavit, Schlosser stated what he believed to be the cause of the mold but previously said that he could not discern what caused the damage during his deposition. But he provided an explanation for these differing conclusions: in the time between these statements, he pulled up the flooring to determine the cause. He provided no such explanation for his contradictory conclusions on the issue of concealment.

{¶35} In his opinion, Schlosser made references to the flooring and paint in the house. We turn to examining whether the facts in the record relating to the flooring and paint can support the inference that Taylor knew about the identified conditions. Taylor's affidavit stated that he replaced the flooring in the kitchen roughly one year prior to moving and the flooring in the living room roughly two years prior to moving. He also averred that he had a company called Lee's Carpet install carpeting in the bedroom prior to selling the house. Taylor stated that, during these projects, he did not observe any indications of water intrusion or mold damage and was not informed of any such conditions by Lee's Carpet.

{¶36} Taylor's affidavit stating that the flooring in several rooms had been replaced does not, by itself, establish that he knew about the conditions identified by Williams. In the same way, Schlosser's affidavit noting that the flooring in several rooms had been replaced does not, by itself, establish that Taylor knew about the conditions identified by Williams. Beyond pointing to the flooring, Schlosser and Williams do not identify any facts that would suggest that Taylor was attempting to conceal indications of water intrusion with this flooring.

{¶37} As noted by the trial court, Williams did not present any admissible evidence that could establish the source of the water intrusion or the progression of the resulting damage to the subfloor. In his deposition in 2023, Schlosser indicated that the water intrusion could have begun anytime between two and five years

earlier. The record indicates that the flooring was installed between three and four years prior to this comment. In the absence of additional information, a finder of fact would have to speculate about whether the moisture damage to the subfloor was observable at the time that Taylor installed the flooring. Having examined the facts in the record, we conclude that Schlosser's reference to the flooring is not sufficient to support the inference made in his conclusion.

{¶38} Turning to his reference to the paint, Schlosser stated the following during his deposition:

[Attorney:] . . . [Y]ou mentioned painting over it [the mold] with Kilz. . . . Are these the ones [the pictures] that you said show *somebody* has painted with Kilz?

[Schlosser:] Yes, sir.

[Attorney:] How can you tell that?

[Schlosser:] Well, looking at it. Kilz is not a true white color. It's a primer, and the way that goes on it's got a thicker texture on it. And you can see where they painted up to a certain point in the closet to where it stops, it's a different shade.

. . . .

[Attorney:] You had mentioned some Kilz applied. Do you have any idea when that was applied?

[Schlosser:] *No, sir*.

[Attorney:] Did you see any evidence of an attempt to conceal the condition of this house when you did your walk-through?

[Schlosser:] *Not at the moment, no*.

(Schlosser Depo. 29, 45). However, as noted previously, no evidence was produced that established when the mold damage appeared or progressed into the closet.

**{¶39}** During his deposition, Schlosser only stated that the amount of mold he observed would have taken more than eighteen to twenty-one days to develop. The record indicates that the house sat vacant between Taylor moving out in early April of 2021 and Williams moving into the house in late July of 2021. Further, Schlosser also stated that Taylor's failure to install a moisture barrier under the flooring he installed likely led to the mold damage. The closets in the bedroom backed up to the kitchen where Taylor had replaced the flooring roughly one year prior to moving. In the absence of some indication as to when the mold progressed into the closet, the evidence in the record does not connect the paint to the condition at issue.

**{¶40}** Further, while Schlosser believes that someone had used primer in the closet, he also stated that he could not provide any indication as to how recently this primer had been applied. The record establishes that Taylor lived at this house for less than four years. Thus, assuming that Schlosser correctly identified the primer used in the closet, the facts in the record do not connect this paint to Taylor. Without more, we conclude that the reference to the paint is not sufficient to support Schlosser's conclusion.

{¶41} In summary, Schlosser's affidavit asserted that Taylor attempted to conceal the conditions identified by Williams. However, this inference is not supported by facts or evidence in the record. For this reason, Schlosser's conclusion ultimately rests on speculation and is conjectural. Since the identified opinion in Schlosser's affidavit does not create a genuine issue of material fact for trial, Williams's second assignment of error is without merit. Having examined the evidence in the record, we conclude that the trial court did not err in granting summary judgment on the basis of the "as is" clause in the purchase agreement. Accordingly, the second assignment of error is overruled.

*Third Assignment of Error*

{¶42} Williams argues that the trial court erred in granting summary judgment as to her claims against AFI.

Legal Standard

{¶43} "An insurance policy is a contract . . . ." *Sarmiento v. Grange Mut. Cas. Co.*, 2005-Ohio-5410, ¶ 8. Thus, the role of a court in interpreting an insurance policy is to give effect to the intentions of the parties. *Jordan v. United Ohio Insurance Company*, 2021-Ohio-2170, ¶ 14 (3d Dist.). Courts are to "examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract." *Kent*, 2022-Ohio-1136, at ¶ 8, quoting *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 2011-Ohio-2720, ¶ 37.

> In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement.
>
> When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. 'As a matter of law, a contract is unambiguous if it can be given a definite legal meaning.' *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11.

*Garlock v. Silver Dollar Camp*, 2021-Ohio-1690, ¶ 12 (3d Dist.), quoting *Sunoco* at ¶ 37. "When provisions of a contract of insurance are reasonably susceptible to more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208 (1988), at syllabus.

**{¶44}** "The burden of showing coverage under a contract of insurance is on the insured." *Motorists Mutual Insurance Company v. Ironics, Inc.*, 2022-Ohio-841, ¶ 9. However, if "an insurer relies on an exclusion to deny coverage, the insurer has the burden of proving the applicability of the exclusion." *Collins v. Auto-Owners Insurance Company*, 2017-Ohio-880, ¶ 24 (12th Dist.), quoting *Will Repair, Inc. v. Grange Ins. Co.*, 2014-Ohio-2775, ¶ 21 (8th Dist.).

Legal Analysis

**{¶45}** Williams argues that the trial court erred in granting summary judgment as to her breach of contract and bad faith claims against AFI. To prevail on a breach of contract claim against AFI, Williams had to demonstrate that (1) a contract existed; (2) she performed under the agreement; (3) AFI failed to perform

under the agreement; and (4) she suffered damages. *Thiel's Wheels*, *Inc. v. State Route 30, Ltd.*, 2022-Ohio-2093, ¶ 14 (3d Dist.). Williams argues that AFI breached the insurance agreement by denying her claim.

{¶46} On appeal, AFI argues that the terms of Williams's policy provided two main bases for denying her claim. AFI first points to the following language:

DEFINITIONS

. . .

9. Occurrence means an accident, including exposure to conditions, which results during the policy period, in:

a. bodily injury; or

b. property damage.

*Continuous or repeated exposure to substantially the same general harmful conditions is considered to be one occurrence.*

. . .

OHIO AMENDATORY HOMEOWNERS ENDORSEMENT

. . .

SUPPLEMENTARY COVERAGES—SECTION I

. . .

Fungi or Bacteria. Fungi or bacteria must occur on the insured premises and *be caused by or result from a cause of loss other than fungi or bacteria covered by this policy. The cause of loss and the actual loss itself must occur while this policy is in effect.* Fungi or bacteria must cause direct physical loss to property covered by this policy.

(Emphasis added.) (Doc. 7, Ex. E). AFI argues that Williams only produced speculative assertions as to when the identified conditions commenced and failed to establish that this occurrence happened after the effective date of her policy.[3]

{¶47} AFI also argues that, even if her assertions are taken as true, Williams posits that the identified conditions existed prior to her purchase of the premises. Schlosser's affidavit suggests that the mold damage was caused by Taylor's failure to install a moisture barrier under the solid surface flooring and resulted from an ongoing water intrusion issue that existed prior to the sale of house.[4] Pursuant to the relevant definitions in the insurance contract, AFI argues that this "occurrence" would predate the effective date of the policy. (Doc. 7, Ex. E). For these reasons, AFI argues that Williams failed to demonstrate that her insurance policy was applicable to this occurrence.

{¶48} As an additional basis for denying coverage, AFI points to the following language in Williams's insurance policy:

---

[3] AFI pointed out that Williams's position on the timing of this condition evolved over the course of this litigation. On one occasion, Williams stated that she believed "the mold had formed after [s]he purchased the property in May." (Doc. 47). But she also asserted that she believed the mold was "preexisting" in her deposition and argued that Taylor had failed to disclose this condition. (Williams Depo. 100). Before the trial court and on appeal, AFI has maintained that Williams's assertions about the timing of this condition are speculative and are not supported by any admissible evidence.

[4] While Schlosser stated that the failure to install the moisture barrier led to the mold damage in parts of the house, his report did not reach a conclusion as to the cause of the moisture intrusion, saying only that this underlying issue could "possibly" be caused by a "busted pipe" or "moisture in the floors." (Doc. 52).

EXCLUSIONS—SECTION 1

PART A

. . . We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any cause or event contributing concurrently or in any sequence to the loss.

. . .

9. Water Damage, meaning:

. . .

c. regardless of its source, water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building or other structure, sidewalk, driveway or swimming pool.

. . .

PERILS AGAINST INSURED—SECTION 1

. . .

LOSSES NOT COVERED

We do not cover loss to the property described in Coverage A resulting directly or indirectly from, or consisting of, or caused by one or more of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1. Losses excluded under EXCLUSIONS—SECTION 1

. . .

3. Continuous or Repeated Seepage or leakage of water or steam from within a plumbing, heating, air-conditioning or automatic fire

> protection sprinkler system or from within a household appliance which occurs over a period of weeks, months or years.

(Doc. 7, Ex. E). As with the timing of the mold issue, AFI asserts that Williams has not provided any admissible evidence that establishes what caused the water intrusion that led to the mold damage and has only made speculative assertions about the causes of these identified conditions.

{¶49} AFI further points out that Williams posits that the mold damage was caused by Taylor's failure to properly install a moisture barrier under the solid surface flooring. Thus, AFI contends that, even if the water intrusion and mold damage had occurred during the policy period, Williams's proposed cause would still clearly fall within the "Continuous or Repeated Seepage" exclusion. (Doc. 7, Ex. E).

{¶50} In response to AFI's motion for summary judgment, Williams did not present any evidence that could establish the identified conditions occurred after the effective date of her insurance policy. For this reason, she has failed to establish that the insurance policy was applicable to this occurrence, as defined in her insurance agreement. As a result, Williams has not demonstrated that a genuine issue of material fact exists for trial on this breach of contract claim. Thus, her first argument herein is without merit.

{¶51} Next, we turn to Williams's claim of bad faith against AFI. This type of claim is "predicated on the relationship between an insurer and its insured."

*Rousana v. Nationwide General Insurance Company*, 2023-Ohio-3796, ¶ 24 (8th Dist.). Under Ohio law, "[a]n insurer owes a duty to its insured to act in good faith in the processing, payment, satisfaction, and settlement of the insured's claims." *Ballard v. Nationwide Ins. Co.*, 2015-Ohio-4474, ¶ 16 (7th Dist.).

{¶52} "As part of its duty, the insurer must 'assess claims after an appropriate and careful investigation' and reach conclusions as a result of 'the weighing of probabilities in a fair and honest way.'" *La Plas Condo. Assn. v. Utica Ntl. Ins. Group*, 2004-Ohio-5347, ¶ 16 (3d Dist.), quoting *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St.3d 690, 699 (1992), *overruled on other grounds in Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552 (1994), first paragraph of the syllabus.

{¶53} To prevail on her bad faith claim against AFI, Williams had to demonstrate that the decision to deny her claim was "not predicated upon circumstances that furnish[ed a] reasonable justification." *Crawford v. American Family Insurance Company*, 2024-Ohio-5345, ¶ 15 (3d Dist.), quoting *Zoppo* at the first paragraph of the syllabus. "An insurer's actions are without reasonable justification when they are arbitrary or capricious." *Eastlawn Properties, LLC v. State Automobile Insurance Company*, 2025-Ohio-1475, ¶ 44 (1st Dist.).

{¶54} "[T]he mere refusal to pay a claim does not automatically give rise to bad faith liability." *Rousana*, 2023-Ohio-3796, at ¶ 25. Thus, "summary judgment is appropriately granted to an insurer 'where the record is devoid of evidence

tending to show a lack of good faith on the part of this insurer.'" *Eastlawn Properties* at ¶ 44, quoting *Drouard v. United Servs. Auto. Assn.*, 2007-Ohio-1049, ¶ 17 (6th Dist.).

**{¶55}** In this case, Williams reported her mold issue to AFI in October or November of 2021. AFI then hired a leak specialist to investigate Williams's claim. After this specialist submitted a report of his findings on December 13, 2021, AFI denied Williams's claim on March 2, 2022. During the course of this litigation, AFI has relied upon the fact that it had a leak specialist investigate Williams's claim and upon several relevant provisions in Williams's policy as an explanation for its decision to deny her claim.

**{¶56}** In response, Williams merely asserts that AFI did not have adequate grounds to deny her claim. Beyond the denial of her claim, Williams does not identify any conduct on the part of AFI that would amount to bad faith. As the trial court concluded in its judgment entry, the record does not contain any evidence that suggests AFI acted in bad faith.

**{¶57}** In summary, AFI explained the bases for its decision to deny Williams's claim. In response, Williams did not provide any evidence that AFI acted in bad faith. For this reason, we conclude that the trial court did not err in granting summary judgment on the claim of bad faith against AFI. Thus, Williams's

second argument herein is without merit.  Accordingly, the third assignment of error is overruled.

*Conclusion*

**{¶58}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Seneca County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and MILLER, J.J., concur.**

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
John R. Willamowski, Judge


_____
William R. Zimmerman, Judge


_____
Mark C. Miller, Judge

DATED:
/hls